Sandra L. ROBERTS,
Plaintiff–Appellant,

v.

Edward Wayne POOLE,
Defendant–Appellee.

Civ. A. No. CA3–87–0774–D.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 25, 1987.

---

B. Prater Monning, III and Beverly Caro of Gardere & Wynne, Dallas, Tex., for plaintiff-appellant.

Greg Gutman of Jackson, Loving & Gutman, Dallas, for defendant-appellee.

## OPINION

FITZWATER, District Judge.

A former wife appeals from an adverse bankruptcy court judgment which held that certain periodic payments to be made by her former husband, a chapter 7 debtor, were not in the nature of alimony, maintenance, or support and were thus dischargeable under 11 U.S.C. § 523(a)(5)(B). The principal question presented is whether the bankruptcy court erred in considering extrinsic evidence to interpret the parties' unambiguous written agreement. Because the bankruptcy court correctly admitted the evidence in question and because its unchallenged factual findings support the judgment, the judgment is AFFIRMED.

## I.

## BACKGROUND FACTS AND PROCEEDINGS BELOW

Plaintiff-appellant, Sandra L. Roberts ("Sandra"), and defendant-appellee, Edward Wayne Poole ("Wayne"), were divorced in 1981. In order to settle the distribution of their property, Sandra and Wayne entered into a written agreement incident to divorce (the "Agreement"), which was incorporated in the divorce decree. The Agreement contained the usual provisions which set forth the purpose of the Agreement, divided the parties' property, apportioned their respective liabilities, prescribed the conservatorship for their daughter, provided for child support, prescribed how federal income taxes would be paid, required that Wayne purchase an annuity for the benefit of Sandra, and contained remedial and technical clauses, including a merger clause and a clause making the Agreement subject to Texas law. The Agreement also contained a section entitled, "Support of Spouse," which required Wayne to make "periodic payments" to Sandra in the amount of $3,000 per month for a period of ten years.[1]

In 1982 Sandra filed suit in Texas state court to enforce the periodic payments obligation undertaken by Wayne and to obtain a restraining order and receivership over his assets. The suit was still pending when, in 1983, Wayne filed a voluntary chapter 7 petition in the bankruptcy court. In 1984 Sandra filed a complaint in the bankruptcy court to determine whether the periodic payments were dischargeable; after trial, the bankruptcy court held that the payments were dischargeable.

The bankruptcy court found that, after Wayne had made eight $3,000 periodic payments, he was unable to make further payments because his businesses had suffered irreversible setbacks which chopped his income from $40,000 or so per month in 1981 (in company profits) to $18,000 to $20,000 per year in 1982 and that he would have continued making the payments but for the business reversals. The bankruptcy court noted that the Agreement stated on its face that the periodic payments "are intended for maintenance and support and that they constitute no part of the property division in the divorce[.]" The court nevertheless

---

1. The provisions in question state:

    7.01. *Periodic Payments*. The support payments provided for in this Section 7 are intended by both spouses to qualify as periodic payments as that term is defined [in the Internal Revenue Code]. The parties therefore contemplate that all provisions of this Section 7 will be interpreted in a manner consistent with that intention. The support obligation contained in this Section 7 is unrelated to the division of any property in this agreement, and it is not intended in any way to constitute a form of payment for any rights or interests in the estate of the parties.

    7.02. *Amount of Payments*. EDWARD W. POOLE agrees to pay SANDRA L. POOLE periodic payments in the amount of $3,000 per month, the first payment being due and payable on the 1st day of December, 1981, and a like payment being due and payable on the same day of each month thereafter for a period of ten (10) years.

concluded that it had both the jurisdiction and obligation to conduct an inquiry concerning the indebtedness, which inquiry could look behind or extend beyond the four corners of the document in question, to determine whether the periodic payments "were truly in the nature of alimony, maintenance, and/or support or whether such payments were, in fact, in the nature of property settlement[.]"

The bankruptcy court relied on the following evidence to conclude that the payments were intended as a division of the parties' property: first, in Sandra's state court suit to enforce the Agreement she alleged under oath that company stock and corporate assets which Wayne received under the Agreement formed the basis for the periodic payments; second, the divorce attorneys and Wayne's bookkeeper arrived at an agreement, based upon Sandra's divorce lawyer's request and suggestion, that the periodic payments be denominated as alimony and for the support of Sandra because Sandra's lawyer believed the Agreement so structured would yield overall tax savings because of perceived probable differences in future marginal tax brackets for Sandra and Wayne; third, the Agreement did not provide for a cessation of payments in the event of Sandra's death or remarriage, which strongly indicated that the parties intended the payments to be consideration for property division rather than alimony, maintenance, and/or support; fourth, at divorce, Sandra took from the estate cash and property valued at approximately $125,000 which, together with $360,000 in anticipated payments, equaled approximately $400,000 to $500,000, and Wayne took personal property and stock in then-successful companies which at the time of the divorce "approximated the value of money and property to which [Sandra] became entitled under the Agreement Incident to Divorce;" and fifth, at the time of the Agreement, Wayne did not have the liquidity to pay Sandra a lump sum settlement and such lack of liquidity

was another factor in the parties' decision "to structure the Agreement in the form of a payout[.]"

After the bankruptcy court entered a take nothing judgment against Sandra, she timely filed a motion for new trial and a motion to alter or amend final judgment. The bankruptcy court[2] denied the motions and made these additional findings and conclusions: the Agreement clearly and unambiguously provides that the periodic payments are to be made for Sandra's support, and not as a part of any property division incident to divorce; the parol evidence rule is inapplicable to a § 523(a)(5) proceeding; and, the terms of the Agreement, even if clear and unambiguous, are subject to contradiction by evidence of prior or contemporaneous agreements or understandings of the parties as to the nature of the periodic payments. Sandra appeals.

## II.

### ANALYSIS

Sandra principally challenges the bankruptcy court's determination that the parol evidence rule is inapplicable to a § 523(a)(5)(B) proceeding and that the clear and unambiguous terms of a written agreement incident to divorce may be contradicted by evidence of prior or contemporaneous agreements or understandings of the parties as to the nature of the periodic payments. Sandra does not challenge the bankruptcy court's factual finding that the payments are properly characterized as a property settlement rather than support. Instead, Sandra urges that the bankruptcy court should never have made such a finding because the Agreement itself unambiguously provides that the periodic payments constitute support and the language of the Agreement properly should have been found to have been determinative.

The Bankruptcy Code excepts from chapter 7 discharge any debt to a former spouse for alimony, maintenance, or

---

**2.** The matter was tried on October 15, 1984 before Judge John C. Ford, who entered a judgment on November 7, 1984. Sandra's motions for new trial and to alter or amend final judg-
ment were denied by order entered February 25, 1987 by Judge Ford's successor, Judge Harold C. Abramson. Sandra timely filed her notice of appeal from Judge Abramson's order.

support of the spouse in connection with a separation agreement, divorce decree, or other court order, governmental unit determination, or property settlement agreement. 11 U.S.C. § 523(a)(5). However, a debt liability designated as alimony, maintenance, or support is not exempt from discharge unless the liability is actually in the nature of alimony, maintenance, or support. 11 U.S.C. § 523(a)(5)(B).[3] The burden is on the person who asserts nondischargeability of a debt to prove its exemption from discharge, *Matter of Benich*, 811 F.2d 943, 945 (5th Cir.1987), and the intention of the parties is the ultimate question, *id.* Sandra and Wayne do not disagree that § 523(a)(5)(B) establishes the controlling law or that the burden of proof is upon Sandra. They do disagree as to the evidence that may properly be considered by the trier of fact. Unfortunately for Sandra, her position that the parol evidence rule restricts the bankruptcy court in the case of an unambiguous written agreement is squarely rejected in this circuit.

In *Benich*, the Fifth Circuit held that the Bankruptcy Code requires the bankruptcy court to determine the true nature of the debt, regardless of the characterization placed on it by the parties' agreement. 811 F.2d at 945 (citing *Brown v. Felsen*, 442 U.S. 127, 138, 99 S.Ct. 2205, 2212–13, 60 L.Ed.2d 767 (1979), and Collier on Bankruptcy § 523.15(3) & (5) (15th ed. 1986)). Accordingly, the bankruptcy court may consider extrinsic evidence to determine the real nature of the underlying obligation in order to determine its dischargeability. *Benich*, 811 F.2d at 945 (citing *In re Wright*, 584 F.2d 83, 84 (5th Cir.1978)).

In her brief, Sandra's analysis of *Benich* is somewhat inscrutable. Sandra comments that *"Benich* is helpful because it shows where the court's initial concern with agreement interpretations evolved from" (Appellant Br. at 15), she asserts that *Benich* interprets Colorado law, *id.,*[4] and she questions the *Benich* court's reliance on *Brown v. Felsen*, the facts of which Sandra contends are distinguishable from *Benich*, *id.* at 15–16. At oral argument, however, her contentions concerning *Benich* were more developed. While acknowledging that *Benich* is the law of the circuit, and while refusing to assert that *Benich* was wrongly decided, Sandra sought to limit the reach of *Benich* to cases which involve contentions of deceit, fraud, and malicious conversion, or which seek to interpret the meaning of a state court decision (which Sandra contends was the case in *Benich* ). Sandra argued that even *Benich* permits enforcement of the parol evidence rule where there are no such allegations and the parties have unambiguously set forth their intentions in an armslength written agreement.

This court does not read *Benich* as narrowly as does Sandra. In *Benich* the Fifth Circuit dealt with a Texas "property-settlement agreement" apparently of the type present in the instant case. The parties were divorced, the husband failed to make contractually prescribed payments to the former wife, the former wife filed suit in Texas state court for breach of the agreement, the husband filed bankruptcy, and the wife sought a declaration that the debt was nondischargeable. Noting that debts for maintenance or support of a wife or child are among those debts expressly exempt from discharge, the *Benich* court held:

> The Bankruptcy Code requires the bankruptcy court, as that court properly held, to determine the true nature of the debt, regardless of the characterization placed on it by the parties' agreement or the property settlement agreement, but not to the extent that—
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

---

**3.** 11 U.S.C. § 523(a)(5)(B):

A discharge under [the applicable sections] of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or

**4.** Sandra conceded at oral argument that this assertion in her brief was erroneous.

state court proceeding. The bankruptcy court may, therefore, consider extrinsic evidence to determine the real nature of the underlying obligation in order to determine dischargeability.

811 F.2d at 945. (Footnotes omitted). *Benich* did cite *Brown v. Felsen*, among other authorities, in support of the foregoing holding, but *Benich* itself did not involve a claim of deceit, fraud, or malicious conversion, nor was the court required, as Sandra asserts, to interpret the meaning of a state court decision.

■ Moreover, assuming *arguendo* that *Benich* has abolished the parol evidence rule in a context that Congress did not intend, Sandra must convince the *en banc* Fifth Circuit or the Supreme Court of the error. This court is bound to follow the law of this circuit as set forth in the *Benich* panel opinion.[5]

Sandra also urges this court to follow *In re Hodges*, 4 B.C.D. 966, 969 (N.D.Tex. 1978) (affirming and adopting bankruptcy court opinion). In *Hodges* the court held, in a Bankruptcy Act decision:

Naturally, where the decree, the agreement, or the record is clear and unambiguous in indicating whether the liability is or is not nondischargeable, then the Bankruptcy Court should stop at any such point.

To the extent, however, that *Hodges* is applicable in a case decided under the Bankruptcy Code, the court questions whether *Hodges* remains viable in light of *Benich*, and hence chooses not to follow *Hodges*. Moreover, it appears that every other court to decide the question has reached the same conclusion as did the *Benich* court. *See, e.g., In re Williams*, 703 F.2d 1055, 1057 (8th Cir.1983) ("[B]ankruptcy courts are not ... bound to accept a divorce decree's characterization of an award as maintenance or a property settlement."); *In re Miller*, 34 B.R. 289, 292 (Bankr.E.D.Pa.1983) ("It is well-established in § 523(a)(5) cases that, in determining the intention of the parties, extrinsic evidence of the parties' intention regarding a partic-

ular obligation should be considered along with the document itself creating the obligation in question."); *In re Smotherman*, 30 B.R. 568, 570 (Bankr.N.D.Ohio 1983) (The "Court must look beyond the four corners of the [divorce] decree" to determine whether a debt is support or property settlement.); *see also* 3 Collier on Bankruptcy ¶ 523.15[5] (15th ed. 1986) ("An agreement between husband and wife may expressly describe an obligation created therein as 'alimony,' but the label is insufficient to make the obligations nondischargeable unless the payment is actually for the support and maintenance of a spouse, former spouse, or child of the debtor.").

■ Sandra also relies upon contract law principles holding that where a contractual provision is unambiguous, extrinsic evidence is irrelevant. Sandra's reliance upon these rules is misplaced. The legislative history of § 523(a)(5) explicitly instructs that "[w]hat constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law." H.R. Rep. No. 595, 95th Cong., 1st Sess. 364, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6320; S.Rep. No. 989, 95th Cong., 2d Sess. 79, *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5865.

■ In sum, where a creditor seeks to have a debt declared nondischargeable on the grounds that it constitutes alimony, maintenance, or support, the bankruptcy court not only may, but it *must* independently determine the parties' intent and, in turn, the nature of the debt. In making this inquiry the bankruptcy court is not limited to cases involving claims of deceit, fraud, or malicious conversion, or to cases which require the interpretation of a state court decision. While the characterization placed upon the debt by a separation agreement or divorce decree has probative value and may be considered by the trier of fact to evidence the parties' intent, that characterization is not determinative even where the characterization is unambiguous.

■ In the present case the bankruptcy court correctly considered extrinsic evi-

---

5. *See In re Ambassador Park Hotel, Ltd.*, 61 B.R. 792, 796 n. 7 (N.D.Tex.1986) (district court bound to follow law of circuit).

dence that would arguably have been foreclosed by the parol evidence rule. Because Sandra does not question the factual findings made by the bankruptcy court and the findings support the judgment entered, no error is presented which requires reversal.[6] Accordingly, the judgment appealed from is affirmed.

**AFFIRMED.**

6. Sandra also contends the bankruptcy court committed reversible error by admitting the testimony of Wayne's divorce lawyer because (1) the testimony violated the parol evidence rule and (2) the selective manner in which Wayne invoked and waived the privilege unduly prejudiced Sandra. The court rejects Sandra's parol evidence rule argument for the reasons stated above. As to the balance of her argument, Sandra has the burden of demonstrating both that the bankruptcy court abused its discretion in admitting the evidence and that Sandra's substantial rights were thereby prejudiced. *See Wallace v. Ener*, 521 F.2d 215, 222 (5th Cir.1975) (error must rise above threshold of harmless error); Fed.R.Evid. 103 (Fed.R.Bankr.P. 9017); Fed.R.Civ.P. 61 (Fed.R.Bank.P. 9005); *Foster v. Ford Motor Co.*, 621 F.2d 715, 721 (5th Cir.1980) (evidentiary rulings must be affirmed unless they affect a substantial right of the complaining party).

The court has carefully considered Sandra's arguments, and concludes that the bankruptcy court did not abuse its discretion in admitting the testimony and that Sandra has not demon-strated that her substantial rights were affected. As to the decision to admit the testimony, this court is not convinced that Sandra could not have moved for a continuance, moved to reopen discovery, and/or moved to compel the testimony of Wayne's divorce attorney, rather than seek to exclude the entire testimony. As to the matter of substantial prejudice, Sandra devotes portions or all of five pages of her brief to the argument that the bankruptcy court erred in admitting the testimony in question. (Appellant Br. at 20–24). In but one paragraph, however, does she attempt to demonstrate how she has been harmed by the admission of the evidence, arguing that the ruling "fail[ed] to give deference to the parol evidence rule" *id.* at 24, a proposition which the court has already rejected, and that "it also allowed evidence which should have in equity and fairness been excluded." *Id.* This court is quite unwilling, on the basis of vaguely asserted notions of "equity and fairness," to hold that a trial court ruling admitting evidence has prejudiced the substantial rights of a party.